KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
ALAN KOSSOFF (SBN 150932)
  akossoff@kwikhlaw.com
JONATHAN STEINSAPIR (SBN 226281)
  jsteinsapir@kwikhlaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

BRACEWELL LLP
CONOR M. CIVINS (TX Bar No. 24040693) (*admitted pro hac vice*)
  conor.civins@bracewell.com
MICHAEL CHIBIB (TX Bar No. 00793497) (*admitted pro hac vice*)
  michael.chibib@bracewell.com
111 Congress Avenue, Suite 2300
Austin, TX 78701-4061
Telephone:  512.472.7800
Facsimile:  800.404.3970

Attorneys for Plaintiff VERSATA SOFTWARE, INC. f/k/a TRILOGY SOFTWARE, INC. and VERSATA DEVELOPMENT GROUP, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| VERSATA SOFTWARE, INC. f/k/a TRILOGY SOFTWARE, INC. and VERSATA DEVELOPMENT GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CONFIGIT A/S, <br><br> Defendant. | Case No. 2:20-cv-09019-JAK (MRWx) <br><br> **VERSATA'S OPPOSITION TO CONFIGIT'S MOTION TO STAY PROCEEDINGS ON '766 PATENT PENDING *INTER PARTES* REVIEW.** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. RELEVANT BACKGROUND......................................................................2

III. ARGUMENT...................................................................................................3

    a.    Factor 1—The stage of this case should be considered neutral............4

    b.    Factor 2—A stay will not substantially simply the issues before the Court .................................................................................................5

    c.    Factor 3—A stay will substantially prejudice Versata .......................10

IV. CONCLUSION ............................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adaptix, Inc., v. HTC Corp.*,
   No. 5:14-cv-02359-PSG, 2015 WL 12839246 (N.D. Cal. Aug. 5, 2015) ................................. 4

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003) ................................................................................................ 6

*Asetek Danmark A/S v. CoolIT Sys., Inc.*,
   No. 19-cv-00410-EMC, 2019 WL 7589209 (N.D. Cal. Dec. 30, 2019) ............................... 7, 9

*In re Basell Poliolefine Italia S.P.A.*,
   547 F.3d 1371 (Fed. Cir. 2008) ................................................................................................ 8

*Black Hills Media LLC v. Pioneer Elecs. (USA) Inc.*,
   CV 14-00471, 2014 WL 12564089 (C.D. Cal. Apr. 29, 2014) ................................................ 4

*Cal. Inst. of Tech v. Broadcom Ltd.*,
   No. CV 16-3714 GW, 2018 WL 7456042 (C.D. Cal. Dec. 28, 2018) ................................. 7, 9

*Esco Corp. v. Berkeley Forge & Tool, Inc.*,
   No. C 09–1635 ......................................................................................................................... 5

*Great West Casualty Co. v. Intellectual Ventures II LLC*,
   IPR2016-01534, 2017 WL 11139840 (PTAB Feb. 15, 2017) .................................................. 7

*Intellibrands LLC v. Jobar Int'l, Inc.*,
   No. CV 19-04505-AB, 2019 WL 7997230 (Nov. 27, 2019) .................................................... 5

*Jiaxing Super Lighting Elec Appliance Co., Ltd v. MaxLite, Inc.*,
   No. CV 19-4047 PSG, 2020 WL 5079051 (C.D. Cal. June 17, 2020) ......................... 5, 6, 10

*Jones v. Hardy*,
   727 F.2d 1524 (Fed. Cir. 1984) ................................................................................................ 6

*In re Lonardo*,
   119 F.3d at 965 ..................................................................................................................... 7, 8

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................................................. 4

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
   775 F.2d 1107 .......................................................................................................................... 6

*Toshiba Tec Corp. v. Katun Corp.*,
   No. CV 15–01979 SJO, 2016 WL 9137646 (C.D. Cal. Sept. 21, 2016) ....................... 5, 6, 10

*TPK Touch Solutions, Inc v. Wintek Electro–Optics Corporation,*
   2013 WL 6021324 ................................................................................................ 10, 11

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
   943 F. Supp. 2d 1028 (C.D. Cal. 2013)......................................................... 4, 10, 11

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
   C 12–05501 SI, 2014 WL 121640 (N.D. Cal. Jan. 13, 2014) ......................... 10, 11

**Statutes**

35 U.S.C. § 315(b) .............................................................................................................. 5

35 U.S.C. § 315(e)(2) .......................................................................................................... 7

Defendant Configit A/S ("Configit") has moved this Court for a limited stay of proceedings as to U.S. Patent No. 6,836,766 ("the '766 patent") pending an instituted *Inter Partes* Review ("IPR") proceeding by the Patent Trial and Appeal Board ("PTAB"). *See* Dkt. No. 56. In response, Plaintiffs Versata Software, Inc. and Versata Development Group, Inc. (collectively, "Versata") would respectfully show the Court as follows:

## I. INTRODUCTION

This case—which involves causes of action for trade secret misappropriation and infringement of two distinct patents—was originally filed in October 2019.[1] Now, after repeated attempts to delay this case, Configit seeks further delay through its recently filed motion to stay proceedings related to the '766 Patent pending the outcome of the IPR. Although Configit limits its motion solely to the '766 patent, it nevertheless contends the Court should grant a limited stay because it will preserve substantial resources, simplify issues, and result in no meaningful prejudice to Versata. Configit is incorrect.

Here, the majority of the factors that Courts consider, as well as the totality of circumstances, weigh against staying the '766 portion of this case. First, while Configit is correct that the case is in its "early stages," that is the result of Configit's serial motion practice, which has resulted in continued delay. Accordingly, this factor is neutral when the totality of the circumstances is considered, including the fact that the current stage of the case is a result of Configit's attempts to impede progress of the case.

The second factor—simplification of issues for trial—weighs against a stay. As discussed below, many of the asserted claims from the '766 patent ***are not*** subject to the pending IPR. Thus, even in the unlikely event that the IPR invalidates one of more of the petitioned claims, the remaining claims asserted in this case will proceed irrespective of the IPR. Furthermore, none of the asserted claims of the '612 patent

---

[1] This litigation was originally filed in the Western District of Texas in 2019.

are subject to an IPR, and none of Versata's trade secret claims will be impacted at all. Accordingly, the vast majority of Versata's case will proceed on the merits regardless of the IPR. In view of the foregoing, Configit's contention that a limited stay would substantially "simplify" issues for trial and preserve both party and judicial resources is overstated and misleading.

Finally, Versata would be unduly prejudiced by a stay. Courts in this District and elsewhere have routinely found heightened prejudice when the parties to the case are competitors. Here, Configit competed directly with Versata in the configuration software space, and that the bulk of Versata's trade secret claims arose from Configit's targeting of Versata's existing customers in competition with Versata. This fact weighs heavily against a stay.

For these reasons and those set forth herein, Versata respectfully requests the Court deny Configit's motion for a limited stay as to the '766 patent.

## II. RELEVANT BACKGROUND

This litigation did not begin in October 2020, as Configit suggests in its motion. Dkt. No. 56, at 2 ("Configit's Motion"). To the contrary, it began in October 2019, well over two years ago. Following serial motions to dismiss, which have resulted in extensive delay—and which included arguments largely rejected by this Court—this case does remain at a relatively "early stage" of proceedings. *See* Configit Motion at 5. However, this is a result of Configit's efforts to defer consideration of the merits, not any dilatory conduct by Versata.

Moreover, this is not a typical patent case where an IPR has the potential to substantially simplify or resolve many (if not all) issues. Instead, this case encompasses multiple causes of action for misappropriation of trade secrets under both state and federal law, which will proceed irrespective of the IPR proceedings related to the '766 patent.[2] *See* Dkt. No. 47 at ¶¶ 9-33, 133-155; *see also* Configit Motion at 1 (seeking a limited stay of the case as to the '766 patent only). As for

---

[2] These causes of action involve misappropriation of an extensive number of trade secrets.

Versata's patent infringement claims, Versata has asserted two unrelated patents against Configit (the '766 and '612 patents), only one of which is subject to an IPR. Thus, Versata's cause of action related to the '612 patent—like Versata's trade secret misappropriation causes of action—will proceed to trial regardless of the IPR. And while an IPR has been instituted for some of the asserted claims of the '766 patent, a number of the asserted claims in this case ***are not*** subject to the IPR, further reducing any purported simplification.[3]  *See* Section III, B., *infra*.

Finally, unlike most cases in which stays have been granted pending the outcome of an IPR, this case involves competitors. Indeed, Versata pioneered the development of automotive configuration software, and a substantial portion of Versata's case is premised on trade secret misappropriation resulting from Configit working with one of Versata's longtime customers, Jaguar Land Rover ("JLR"). *See* Dkt. No. at ¶¶ 9-33, 133-155. Furthermore, Versata contends that Configit built its current software offering using Versata's trade secrets, and continues to compete unfairly in the market by targeting customers with that software. *Id*. Not only is Versata seeking monetary damages related to this unfair competition, it is also seeking to enjoin Configit's continued sale of its software in the marketplace, as well as a declaratory judgment that Versata owns any software currently sold by Configit in the market that was built using Versata's trade secrets. *Id*. at ¶¶ 151-160; *see also id*. at Request for Relief.

### III.   ARGUMENT

Courts in this District consider three factors in deciding whether to issue a stay: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving

---

[3] The Patent Trial and Appeal Board ("PTAB" or "Board") instituted the IPR solely on the method claims of the '766 patent, including asserted claims 1, 9-15, 17, and 19. None of the other claims in the '766 patent, including asserted claims 20 & 28-33, are part of the IPR.

party." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030-31 (C.D. Cal. 2013) (quotes omitted).

Although these factors are important, "[t]he inquiry is not limited to these three factors. Rather, the totality of the circumstances governs." *Id*. at 1031 (quotes omitted). Indeed, "[a] stay is an 'intrusion into the ordinary processes of administration and judicial review.'" *Adaptix, Inc., v. HTC Corp.*, No. 5:14-cv-02359-PSG, 2015 WL 12839246, at *1 (N.D. Cal. Aug. 5, 2015) (citing *Nken v. Holder*, 556 U.S. 418, 427 (2009)). As a result, "[a] court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze." *Id.*; *Universal Elecs.*, 943 F. Supp. 2d at 1031 (confirming that there is no requirement to stay litigation pending IPR proceedings). To the contrary, "[i]f litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts." *See Black Hills Media LLC v. Pioneer Elecs. (USA) Inc.*, CV 14-00471, 2014 WL 12564089, at *4 (C.D. Cal. Apr. 29, 2014) (quotes omitted); *Adaptix*, 2015 WL 12839246 at *1 (noting that a rule that patent cases should be stayed pending Patent Office proceedings "'would invite parties to unilaterally derail' litigation") (citations omitted).

As demonstrated below, the majority of factors and totality of circumstances in this case weigh against a stay.

a. **Factor 1—The stage of this case should be considered neutral**

The first factor courts typically consider is the stage of the proceedings, including "whether discovery is complete and whether a trial date has been set." *Universal Elecs.*, 943 F. Supp. 2d at 1030–31. Here, Versata acknowledges that the case is at an early stage. As noted above, however, the stage of this case is due in large part to Configit's repeated attempts to delay the case. Configit should not be rewarded for these attempts, particularly as the Court has found them to be largely without merit. *See* Dkt. No. 44 (denying the vast majority of arguments in Configit's

1  motion to dismiss). Accordingly, this factor should be considered neutral considering
2  the totality of the circumstances and the remaining factors addressed herein.

3  Regardless, even if this factor weighed in favor of a stay, it does not outweigh
4  the remaining two factors, which strongly disfavor a stay. *See, e.g., Jiaxing Super*
5  *Lighting Elec Appliance Co., Ltd v. MaxLite, Inc.*, No. CV 19-4047 PSG (MAAx),
6  2020 WL 5079051, at *2 (C.D. Cal. June 17, 2020) (denying a motion to stay where
7  the case was in the early stages); *Esco Corp. v. Berkeley Forge & Tool, Inc.*, No. C
8  09–1635 SBA, 2009 WL 3078463, at *2 (N.D. Cal. Sept. 28, 2009) (denying a motion
9  to stay even though the case was "in its embryonic stage").

10  **b.  Factor 2—A stay will not substantially simply the issues before the Court**
11  "Courts have observed that 'to truly simplify the issues the outcome of the
12  reexamination must finally resolve all issues in the litigation.'" *Jiaxing*, 2020 WL
13  5079051, at *3 (citations omitted) (denying motion to stay pending IPR); *Esco*, 2009
14  WL 3078463, at *3 (denying motion to stay); *Intellibrands LLC v. Jobar Int'l, Inc.*,
15  No. CV 19-04505-AB (JEMx), 2019 WL 7997230, at *2 (Nov. 27, 2019) ("A stay is
16  generally unwarranted 'when reexamination potentially will eliminate only one issue
17  out of many.'"). Accordingly, "courts regularly deny motions to stay where IPRs
18  were instituted on only a portion of the claims asserted." *Toshiba Tec Corp. v. Katun*
19  *Corp.*, No. CV 15–01979 SJO (JCx), 2016 WL 9137646, at *4 (C.D. Cal. Sept. 21,
20  2016); *Intellibrands,* 2019 WL 7997230, at *2.

21  As explained above, Configit's IPR does not address claims 20 and 28-33 of
22  the '766 patent (the "CRM" or "non-petitioned" claims). Moreover, Configit is
23  statutorily barred from filing any additional IPR petitions related to the non-petitioned
24  claims given that more than a year has elapsed since it was served with the complaint
25  in this action. *See* 35 U.S.C. § 315(b). Thus, because the IPR will not address the
26  non-petitioned claims, it is "guaranteed to not resolve all issues in the case, and it may
27  not even simplify them." *Toshiba Tec*, 2016 WL 9137646, at *3 (citation omitted).
28

1  This fact "weighs meaningfully against granting a stay." *Id*. at *4; *Jiaxing*, 2020 WL 5079051, at *3-4.

Configit's assertion that the petitioned claims "exactly mirror" the non-petitioned claims, and that the differences between the claims is simply "boilerplate language" that does not provide a patentably distinct structure, is inaccurate. *See* Configit Motion at 7. As an initial matter, Configit ignores the fact that the petitioned claims and the non-petitioned claims were independently examined and issued by the Patent Office, and that "each claim must be considered as defining a separate invention." *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1326 (Fed. Cir. 2003) ("There is a rebuttable presumption that different claims are of different scope"). Moreover, the non-petitioned claims are directed to a computer program product—or article of manufacture—that includes additional limitations not present in the method claims. For example, the non-petitioned claims recite computer code to cause a processor to test a product, as well as computer readable program code configured to cause a computer system to allow a user to enter a test case, process a test case, generate explanation data, and perform other functions. Thus, Configit's conclusory allegation that the non-petitioned claims are not "patentably distinct" is unfounded.[4] *Jones*, 727 F.2d at 1528; *Amgen*, 314 F.3d at 1326; *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 at (Fed. Cir. 1985) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.").

Indeed, Configit's arguments regarding the non-petitioned claims appear to be a thinly-disguised attempt to circumvent the statutory estoppel provisions that

---

[4] Configit's contention that the claims are not patentably distinct is also undercut by the fact that Configit itself treated the claims differently by only requesting an IPR on the method claims, not the CRM claims. *Toshiba Tec*, 2016 WL 9137646, at *3 ("Katun's contention that 23 of the 30 asserted claims and 7 of the 9 Asserted Patents are potentially implicated by the IPR petitions is 'undercut by the fact that [Katun] has treated the [ ] patents very differently by only requesting reexamination of the ['015 and '091] Patent[s]'") (citations omitted).

necessarily attach to its IPR.  Upon issuance of a Final Written Decision in the IPR, Configit will be estopped as a matter of law from raising any invalidity ground that it "***raised or reasonably could have raised*** during that *inter partes* review." 35 U.S.C. § 315(e)(2) (emphasis added).  This includes non-petitioned grounds that Configit did not raise in its IPR. *Cal. Inst. of Tech v. Broadcom Ltd.*, No. CV 16-3714 GW (AGRx), 2018 WL 7456042, at *6 (C.D. Cal. Dec. 28, 2018) ("[A] petitioner cannot be left with the option to institute a few grounds for IPR while holding some others in reserve for a second bite at the invalidity apple once in the district court."); *Asetek Danmark A/S v. CoolIT Sys., Inc.*, No. 19-cv-00410-EMC, 2019 WL 7589209, at *6 (N.D. Cal. Dec. 30, 2019) ("Unsurprisingly, all of the district courts. . . that have considered the question . . .  in the aftermath of *SAS* and *PGS Geophysical* have ruled that estoppel applies to non-petitioned grounds").

In view of Configit's contention that the same prior art allegedly impacts the non-petitioned claims, it plainly could have—and should have—included those claims in its IPR petition.  Configit's *post hoc* attempt to evade the estoppel consequences of its affirmative decision not to seek review of those claims is improper. *Cal. Inst. of Tech.* 2018 WL 7456042, at *6; *Asetek*, 2019 WL 7589209, at *6; *Great West Casualty Co. v. Intellectual Ventures II LLC,* IPR2016-01534, 2017 WL 11139840, at *6 (PTAB Feb. 15, 2017) ([A] petitioner makes an affirmative choice to avail itself of *inter partes* review only on certain grounds," which "comes with consequences, most prominently" estoppel.)

The cases cited by Configit do not alter this conclusion.  In *In re Lonardo*, the USPTO rejected claims during *ex parte* reexamination on the grounds of obviousness-type double patenting.  119 F.3d 960, 965, 967-68 (Fed. Cir. 1997).  But the judicially created doctrine of obviousness-type double patenting is wholly inapplicable in this case, as it simply "'prohibit[s] a party from obtaining an extension of the right to exclude through ***claims in a later patent*** that are not patentably distinct ***from claims***

*in a commonly owned earlier patent*.'" *In re Basell Poliolefine Italia S.P.A.*, 547 F.3d 1371, 1375 (Fed. Cir. 2008) (emphasis added) (citation omitted).[5]

*Ohio Willow Wood* is similarly inapplicable. *See* 735 F.3d 1333 (Fed. Cir. 2013). In that case, the court affirmed a finding that a party was collaterally estopped from asserting claims in one patent that were similar to claims from another patent that had undergone *ex parte* reexamination. *Id*. at 1342-43. But the court's holding was based on an explicit finding during summary judgment that the unadjudicated patent claims and the adjudicated patent claims did not materially change the invalidity analysis. *Id*. In contrast, the PTAB has made no such finding here, nor can it do so since the non-petitioned claims are not before it.[6] Configit also overlooks the fact that an IPR differs substantially from an *ex parte* reexamination since an IPR petitioner is statutorily estopped from raising any grounds of invalidity that it raised or could have reasonable raised in an IPR.[7] In short, neither of the cases cited by Configit support the proposition that Configit can circumvent statutory IPR estoppel by filing an IPR on only certain claims and subsequently arguing that other, non-petitioned claims in the same patent are invalid because they allegedly are not "patentably distinct."

Finally, Configit's arguments regarding judicial economy are largely illusory. For example, Configit argues that a stay will "avoid[] the risk of inconsistent claim

---

[5] Further, to establish obviousness-type double patenting, a patent examiner must first determine "whether the application claims are obvious over the patent claims." *In re Basell*, 547 F.3d at 1375; *In re Lonardo*, 119 F.3d at 965 (affirming a finding of obviousness-type double patenting only after the Patent Office had undertaken a detailed analysis of different claims and concluded that the structures were not patentably distinct). In contrast, the Board has not conducted any such analysis for the non-petitioned claims, nor will it do so given that the non-petitioned claims are not before it. Accordingly, Configit's self-serving proclamation that the claims are not patentably distinct does not make it so.

[6] Notably, both sets of claims in *Ohio Willow Wood* were drawn to an apparatus. *Id*. at 1343. In contrast, here the petitioned claims are drawn to a method, while the non-petitioned claims are drawn to an article of manufacture. The non-petitioned claims also include additional limitations that are not present in the method claims.

[7] There is no such statutory estoppel in an *ex parte* reexamination.

constructions" and "parallel independent proceedings that will consider similar claim construction" issues. Configit Motion at 7-8. But in its IPR petition, Configit "[did] not identify any claim elements that warrant express constructions," and the PTAB determined that "it is not necessary to provide an express interpretation of any other claim terms." Dkt. 56-3 at 6, 9. As such, the alleged "risk of inconsistent claim constructions" is theoretical at best.

Similarly, Configit contends that a stay will avoid parallel independent proceedings "that will consider similar . . . invalidity issues." Dkt. 56-1 at 7-8. But Configit fails to mention that it is *already* precluded from raising the same invalidity issues raised in the IPR. Indeed, in order to persuade the Board to institute an IPR on its petition, Configit expressly stipulated that, if the IPR was instituted, it "will not pursue those same instituted grounds, or grounds sharing the same prior art references that could have been asserted in IPR, in the above-captioned litigation with respect to the claims subject to IPR." *See* Declaration of Jared Schuettenhelm In Support of Versata's Opposition ("Schuettenhelm Decl.") at Ex. 1 (letter to Versata's counsel); Ex. 2 at 73 ("Configit stipulates . . . to forego the above-discussed grounds, and any grounds sharing the same prior art references that could have been raised in IPR, against these claims in the co-pending district court litigation if the Board institutes review."). Given that Configit's IPR has now been instituted, it is thus prohibited from raising in this litigation the same "invalidity issues" presented in the IPR. And upon issuance of a Final Written Decision by the PTAB, Configit will be statutorily estopped from raising invalidity on *any grounds* that it *raised or reasonably could have raised*—including grounds involving the non-petitioned claims asserted in this litigation. *Cal. Inst. of Tech.* 2018 WL 7456042, at *6; *Asetek*, 2019 WL 7589209, at *6.

Finally, and most importantly, Configit ignores the fact that the majority of this case will proceed regardless of the IPR. Indeed, the parties will continue to move forward with discovery and other issues related to Versata's trade secret claims, as

well as its infringement claims related to the '612 patent. In view of this, Configit has not demonstrated that any incremental costs and efforts related solely to the '766 patent justify staying the litigation solely for that patent. *Toshiba Tec*, 2016 WL 9137646, at *4; *Jiaxing*, 2020 WL 5079051, at *3-4.

### c. Factor 3—A stay will substantially prejudice Versata

Under this factor, courts consider "whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Universal Elecs.*, 943 F. Supp. 2d at 1031. While a number of considerations may be taken into account when weighing prejudice, one of the most important is whether the parties are direct competitors. Indeed, "[c]ourts regularly find this factor ***weighs strongly against granting a stay*** where the parties are direct competitors." *Toshiba Tec Corp.*, 2016 WL 9137646 at *4 (emphasis added); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, C 12–05501 SI, 2014 WL 121640, *3 (N.D. Cal. Jan. 13, 2014) ("Courts are generally reluctant to stay proceedings where the parties are direct competitors.") (quotations omitted); *TPK Touch Solutions, Inc v. Wintek Electro–Optics Corporation*, 2013 WL 6021324, at *5-*6 (denying a stay where the parties were direct competitors).

Here, this case is predicated on direct competition between Versata and Configit; indeed, most of the complaint is based on Configit's direct competition for one of Versata's long term customers, JLR. *See* Dkt. No. at ¶¶ 9-33, 133-155. Furthermore, not only is Versata seeking monetary damages related to this unfair competition, it is seeking to enjoin Configit's continued sale of its software in the marketplace, as well as a declaratory judgment that Versata ***owns any software*** currently sold by Configit in the market that was built using Versata's trade secrets. *Id*. at ¶¶ 151-160; *see also id*. at Request for Relief. Courts have repeatedly determined a stay is not appropriate in such circumstances. *See Toshiba Tec Corp.*, 2016 WL 9137646 at *4; *Verinata Health, Inc.*, 2014 WL 121640 at *3; *TPK Touch Solutions*, 2013 WL 6021324, at 4.

In its motion, Configit glosses over the unfair competition issues raised in Versata's complaint, and simply suggests that "the parties are not the sole competitors in this market." Configit Motion at 9. Not only does Configit fail to provide any authority suggesting that prejudice only results between "sole competitors," it provides no analysis or explanation of how prejudice to Versata would somehow be reduced or minimized because there are other competitors in the market. *See id.* Accordingly, Configit's attorney argument should be rejected. *See TPK Touch Solutions,* 2013 WL 6021324, at 5-6 (rejecting the defendant's contention regarding minimal prejudice when it failed to present evidence quantifying the alleged reduction in competitive prejudice from the existence of other market participants); *Verinata*, 2014 WL 121640 at *3 ("[S]imply stating that there are other market participants is insufficient to show that [the Patentee] will not be prejudiced").

Configit also contends that Versata did not seek a preliminary injunction, "which also weighs against a finding of undue prejudice from an IPR stay." Configit Motion at 9. However, as numerous courts have recognized, a party's decision not to seek a preliminary injunction may be based on many reasons other than its view of the merits of its competition claims, and therefore should have no impact on the stay analysis. *See Verinata*, 2014 WL 121640 at *3; *see also Universal Electronics, Inc. v. Universal Remote Control, Inc*., 943 F.Supp.2d 1028, 1034 (N.D. Cal May 2, 2013).

### IV.   CONCLUSION

For the above and foregoing reasons, Versata respectfully requests that the Court deny Configit's Motion to Stay as to the '766 Patent.

Dated: January 27, 2022

/s/   Alan Kossoff
Alan R. Kossoff
Kinsella Weitzman Iser Kump Holley LLP